UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

SHEILA BIDAR, AS ADMINISTRATOR OF THE
ESTATE OF RUTH BIDAR, *individually and on
behalf of all others similarly situated*,

                              Plaintiff,

                        v.

ECKERT, SEAMANS, CHERIN AND MELLOTT,
LLC, DEUTSCHE BANK NATIONAL TRUST
COMPANY, SELECT PORTFOLIO SERVICING,
INC., and HINSHAW & CULBERTSON, LLP,

                            Defendants.

-------------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-1828 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Sheila Bidar, as Legal Guardian of Ruth Bidar,[1] commenced the above action

individually and on behalf of all others similarly situated on April 3, 2025 against Defendants

Eckert, Seamans, Cherin and Mellott, LLC ("Eckert LLC"), Deutsche Bank National Trust

Company ("Deutsche Bank"), and Select Portfolio Servicing, Inc. ("Select Portfolio").[2]

(Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on June 13, 2025, adding

Defendant Hinshaw & Culbertson, LLP ("Hinshaw LLP"), (Am. Compl. ¶ 11), and asserting ten

---

[1]  The Court notes that Plaintiff refers to Ruth Bidar as Ruth Athill in the Amended Complaint.  (*See, e.g.*, Am. Compl. ¶ 22 ("Ruth Athill [ ] is [Plaintiff's] mother."), Docket Entry No. 43.)  In Plaintiff's October of 2025 notice stating that Ruth Bidar passed away, Plaintiff refers to Ruth Bidar as both Ruth Bidar and Ruth Athill.  (Pl.'s Notice, Docket Entry No. 64 ("[O]ur client Ruth *Bidar* [as known as] Ruth *Athill* passed away . . . .") (emphasis added).)  For consistency, the Court will refer to Ruth Bidar as set forth in the caption of the Amended Complaint.

[2]  Plaintiff initially also named John and Jane Doe Investors 1–10 and John and Jane Doe 1–10 as Defendants but dismissed them from the action on June 11, 2025.  (Notice of Voluntary Dismissal, Docket Entry No. 42; Order dated June 11, 2025.)

causes of action claiming that Defendants conspired to defraud Ruth Bidar of surplus money and award themselves inflated compound interest from the foreclosure sale of Ruth Bidar's home located at 89-25 168th Street, Jamaica, New York (the "Subject Property"), (*id.* ¶ 55; *see generally id.*)  Plaintiff asserts five causes of action against Defendants for violations of: (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), (*id.* ¶¶ 104–11); (2) New York General Business Law § 349 ("GBL § 349"), (*id.* ¶¶ 112–17); (3) the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)–(d) ("RICO"), (*id.* ¶¶ 122–54); (4) *prima facie* tort, (*id.* ¶¶ 181–85); and (5) conversion, (*id.* ¶¶ 186–92).  In addition, Plaintiff alleges four claims individually against Eckert LLC and Hishaw LLP for violations of: (1) New York Judiciary Law § 487 ("Judiciary Law § 487"), (*id.* ¶¶ 118–21); (2) negligence, (*id.* ¶¶ 155–65); (3) gross negligence, (*id.* ¶¶ 166–69); and (4) legal malpractice, (*id.* ¶¶ 170–74).  Plaintiff also alleges a claim individually against Deutsche Bank for unjust enrichment.  (*Id.* ¶¶ 175–80.) Plaintiff seeks against all Defendants a declaratory judgment, injunctive relief enjoining Defendants from continuing their alleged unlawful debt collection activities, actual and compensatory damages, treble damages pursuant to RICO and Judiciary Law § 487, statutory damages pursuant to the FDCPA, disbursements, costs, and attorneys' fees.  (*Id.* at 45–46.)

Eckert LLC, Deutsche Bank, Select Portfolio, and Hinshaw LLP move separately to dismiss the Amended Complaint, and Plaintiff opposes the motions.[3]  For the reasons discussed below, the Court grants the motions and dismisses the Amended Complaint.

---

[3]  (Select Portfolio's Mot. to Dismiss ("Select Portfolio's Mot."), Docket Entry No. 57; Select Portfolio's Mem. in Supp. of Select Portfolio's Mot. ("Select Portfolio's Mem."), Docket Entry No. 58; Select Portfolio's Reply in Supp. of Select Portfolio's Mot. ("Select Portfolio's Reply"), Docket Entry No. 60; Deutsche Bank's Mot. to Dismiss ("Deutsche Bank's Mot."), Docket Entry No. 65; Deutsche Bank's Mem. in Supp. of Deutsche Bank's Mot. ("Deutsche Bank's Mem."), Docket Entry No. 66; Deutsche Bank's Reply in Supp. of Deutsche Bank's Mot. ("Deutsche Bank's Reply"), Docket Entry No. 67; Eckert LLC's Not. of Mot. to Dismiss

## I.    Background

### a.    The parties

Plaintiff is a New York State resident and a "consumer" as defined by the FDCPA.  (*Id.* ¶¶ 22, 105.)  In addition, Plaintiff is the administrator of the Estate of Ruth Bidar.[4]  Eckert LLC is a law firm located with its principal place of business in Pennsylvania and conducts business in New York State.  (*Id.* ¶ 25.)  Deutsche Bank maintains its principal place of business in California and conducts business in New York and is a "debt collector" as defined by the FDCPA.  (*Id.* ¶¶ 23, 105.)  As part of its business, Deutsche Bank acts as a mortgage noteholder.  (*Id.* ¶ 28.)  Select Portfolio is a mortgage servicing corporation that maintains its principal place of business and headquarters in Utah and conducts business in New York and is a "debt collector" as defined by the FDCPA.  (*Id.* ¶¶ 24, 105.)  As part of its business, Select Portfolio acts as a mortgage servicer that manages the loans.  (*Id.* ¶ 29.)  Hinshaw LLP is a law firm located with its principal place of business in New York and conducts business in New York State.  (*Id.* ¶ 26.)  Deutsche Bank retained Eckert LLC and Hinshaw LLP as law firms to "collect on consumer debt that Deutsche Bank claims to own" and "[p]ursuant to that retention, [Eckert

---

("Eckert LLC's Mot."), Docket Entry No. 69; Eckert LLC's Mem. in Supp. of Eckert LLC's Mot. ("Eckert LLC's Mem."), Docket Entry No. 70; Eckert LLC's Reply in Supp. of Eckert's Mot. ("Eckert LLC's Reply"), Docket Entry No. 72; Hinshaw LLP's Mot. to Dismiss ("Hinshaw LLP's Mot."), Docket Entry No. 78; Hinshaw LLP's Mem. in Supp. of Hinshaw LLP's Mot. ("Hinshaw LLP's Mem."), appended to Hinshaw LLP's Mot. as Ex. 24, Docket Entry No. 78-24; Hinshaw LLP's Reply in Supp. of Hinshaw LLP's Mot. ("Hinshaw LLP's Reply"), Docket Entry No. 79; Pl.'s Opp'n to Select Portfolio's Mot., Deutsche Bank's Mot., Eckert LLC's Mot., and Hinshaw LLP's Mot. ("Pl.'s Opp'n"), Docket Entry No. 63.)

[4]  The Amended Complaint states that Plaintiff is "a legal guardian appointed to Ruth [Bidar], who is Ms. [Sheila] Bidar's mother."  (Am. Compl. ¶ 22.)  On October 14, 2025, Plaintiff filed a notice stating that Ruth Bidar passed away on September 28, 2025.  (Pl.'s Notice.)  On November 21, 2025, Plaintiff filed a motion to substitute "Sheila Bidar, as Administrator of the Estate of Ruth Bidar" as Plaintiff.  (Mot. to Substitute Party, Docket Entry No. 76.)  On December 1, 2025, the Court granted the motion.  (Order dated Dec. 1, 2025.)

LLC and Hinshaw LLP] file[] and maintain[] actions in New York State courts seeking debt collection" for amounts owed on mortgage agreements.  (*Id.* ¶¶ 25–26.)

### b. Plaintiff's allegations

Plaintiff alleges Defendants "collectively engaged in a fraudulent scheme to purposefully miscalculate interest due and owing on residential mortgages in order to obtain vastly inflated payouts from court-ordered foreclosure sales."  (*Id.* ¶ 11.)  In support, Plaintiff contends that Defendants "submit[ed] deceptive documentation to New York Courts" that they expected would be "blindly approve[d]" and "prematurely utilize[d] the final monetary judgment award to the noteholder [Deutsche Bank] awarded in a court's [j]udgment of [f]oreclosure and [s]ale . . . in calculating improper compound interest accrued on a mortgage loan before the [judgment of foreclosure and sale] was actually entered."  (*Id.* ¶¶ 12–13.)  By using the "already-determined [judgment of foreclosure and sale] amount as the basis for the calculation of interest . . . instead . . . of the mortgage principal," (*id.* ¶ 14), Defendants received excess money from the state court-ordered foreclosure sale of the Subject Property and "deprived Plaintiff . . . of [her] legal right to be awarded surplus monies." [5]  (*Id.* ¶¶ 11, 12.)

---

[5]  In the Amended Complaint, Plaintiff seeks certification of this action as a collective action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself, individually, and the following class:

> (a) all persons sued, or creditors of such persons or lienholders of liens against the property that was the subject of the foreclosure action in question, in state-court lawsuits related to the collection of debt owed on a mortgage loan document secured by real property, (b) that were sold at auction, (c) in which Eckert [LLC] was identified as counsel for the plaintiff in the complaint, (d) within six years of the date of the filing of this action.  Excluded from the [c]lass are the officers and directors of any Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest, at all relevant times.

(Am. Compl. ¶ 97.)

### i.   The foreclosure action

In September of 1969, Ruth Bidar and Ada Athill purchased the Subject Property.[6]  (*Id.* ¶ 55.)  On June 14, 2010, Deutsche Bank commenced a foreclosure action under Index No. 15202/2010[7] against Ruth Bidar and Ada Athill in the Supreme Court of the State of New York, Queens County (the "State Court Action").[8]  (*Id.* ¶ 66.)  Eckert LLC began representing

_____

[6] In June of 2004, Plaintiff states that, "unbeknownst to Ruth [Bidar], a deed was executed transferring Ruth's interest in the Subject Property to Ada, making Ada the sole owner of the Subject Property."  (*Id.* ¶ 58.)  On the same day, Ada Athill took out a $75,000 mortgage with non-party New Century Mortgage Company, which was secured by the Subject Property.  (*Id.* ¶ 59.)  In April of 2007, Ruth Bidar commenced an action against Ada Athill in the Supreme Court of the State of New York, Queens County seeking to restore her ownership interest in the Subject Property and "to receive some portion of the monetary proceeds" from the mortgage secured by the Subject Property.  (*Id.* ¶ 61.)  In June of 2008, Ada Athill executed a deed transferring her entire interest in the Subject Property to herself and Ruth Bidar.  (*Id.* ¶ 62.)  In June of 2010, non-party New Century Mortgage Company assigned the mortgage to Deutsche Bank.  (*Id.* ¶ 65.)

[7] In 2020, the State Court Action was digitized and made available on the online state court docket under Index No. 721299/2020.  *Deutsche Bank Nat. Tr. Co. v. Lemos*, No. 721299/2020.

[8] The Court takes judicial notice of the documents filed in the State Court Action.  *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) (internal quotation marks omitted))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings" (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record,' including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

Deutsche Bank as the attorneys-of-record in June of 2015.  (*Id.* ¶ 67.)  In April of 2019, Deutsche Bank, with the assistance of its attorney Eckert LLC, filed a notice of motion for summary judgment and order of reference in the State Court Action.  (*Id.* ¶ 68.)  In October of 2019, the state court granted Deutsche Bank's motion for summary judgment.  (*Id.* ¶ 69.)

In January of 2020, a court-appointed referee submitted a Referee's Report of Amount Due which set forth the amounts due and owing on the mortgage to be a total amount of $167,773.01.  (*Id.* ¶ 70.)  The Referee's Report of Amount Due included an affidavit from Select Portfolio (the "Select Portfolio Affidavit"), which provided the figures the referee used to calculate the amount due to Deutsche Bank, including *inter alia* a principal balance of $69,554.84, outstanding interest of $33,932.83, "Escrow Advances" of $62,799.64, and "Advances Made on [Ruth Bidar]'s Behalf" of $1,485.70.  (*Id.* ¶ 70; Select Portfolio Aff. 3, annexed to Decl. of Robin L. Muir in Supp. of Select Portfolio's Mot. ("Muir Decl.") in Ex. 2 (Referee's Report of Amount Due) 9–12, Docket Entry No. 59-2.)  Plaintiff alleges that Deutsche Bank filed a notice of motion for judgment of foreclosure and sale in the State Court Action on February 21, 2020, with a proposed order drafted by Eckert LLC that is "either identical or substantially similar" to the judgment of foreclosure and sale subsequently entered by the Court.  (Am. Compl. ¶ 71.)  On May 27, 2022, the state court entered the Judgment of Foreclosure and Sale for $167,773.01 due on the Subject Property (the "Judgment of Foreclosure and Sale").  (*Id.* ¶ 71; J. of Foreclosure and Sale, annexed to Muir Decl. as Ex. 3, Docket Entry No. 59-3.)

On May 26, 2023, the Subject Property was sold via public auction for $785,000 to a non-party company.  (Am. Compl. ¶¶ 73, 83.)  The Referee filed the Referee's Report of Sale

6

(the "Referee's Report of Sale") for the State Court Action on October 16, 2024[9] that utilized the final judgment amount awarded in the Judgment of Foreclosure and Sale, $167,773.01, to compute the interest owed to Defendants and awarded Deutsche Bank a total of $210,881.41, including interest.  (*Id.* ¶¶ 75–76, 81; Referee's Report of Sale 4, annexed to Muir Decl. as Ex. 5, Docket Entry No. 59-5.)  Relevant figures from the Referee's Report of Sale are: (1) $167,733.01 the "[a]mount due on note and mortgage as per [J]udgment [of Foreclosure and Sale]"; (2) $24,469.44, the "[i]nterest from 1/3/[20]20 to 5/4/[20]22, date of [J]udgment" at 6.25%; and (3) $15,964.96, the "[i]nterest from 5/5/[20]22, as per [J]udgment, to 5/26/[20]23" at 9%.  (Am. Compl. ¶ 76; Referee's Report of Sale 4.)  The final judgment amount of $167,773.01 in the Referee's Report of Sale includes interest at the mortgage rate up until January 3, 2020, and it computes interest at the mortgage interest rate using the judgment amount as its basis instead of the mortgage principal.  (Am. Compl. ¶ 78.)  Plaintiff alleges that Defendants submitted a proposed order with improper calculations that "prematurely utilize the final judgment amount to compute the pre-judgment interest accrued," (*id.* ¶ 79), and therefore awarded Deutsche Bank a total of $210,881.41, instead of $197,528.53, Plaintiff's alleged correct total amount, for a surplus of $13,352.88.  (*Id.* ¶¶ 80–81.)

On May 15, 2024, the new owner of the Subject Property assigned its winning bid to Deutsche Bank.  (*Id.* ¶ 84.)  Plaintiff contends that the new owner "no longer wanted to purchase the Subject Property."  (*Id.*)  The Referee's Report of Sale indicated that Deutsche Bank purchased the Subject Property for $207,071.28.  (*Id.* ¶ 85; Referee's Report of Sale 4.)  Plaintiff

---

[9] In the Amended Complaint, Plaintiff indicates that the Referee filed the Referee's Report of Sale on two different dates, September 17, 2024, (Am. Compl. ¶ 75), and October 16, 2024, (*id.* ¶ 85).  The Referee signed the Referee's Report of Sale on September 17, 2024 and filed it in the State Court Action on October 16, 2024.  (*See* Referee's Report of Sale.)

contends that Deutsche Bank purchased the Subject Property for $577,928.72 less than the winning bid "[w]ith no explanation as to how or why." (Am. Compl. ¶ 86.) In addition, Plaintiff contends that "Deutsche Bank purchased the Subject Property for only $3,810.13 less than what it claimed it was owed in the Referee's Report of Sale," and "neither the borrowers nor their creditors were able to recover any surplus monies from the sale." (*Id.* ¶¶ 87–88.)

On June 6, 2025, Hinshaw LLP, as counsel for Deutsche Bank, filed a motion to amend the Referee's Report of Sale in the state court.[10] (*Id.* ¶ 90.) Plaintiff alleges, first, that "Hinshaw [LLP] openly admits that the bid price at auction was misstated, that a real estate closing occurred, that a deed and transfer documents were prepared, and that the recorded sale price materially deviates from the judgment." (*Id.*) Second, Plaintiff contends that, in its motion seeking to amend the Referee's Report of Sale, Hinshaw LLP "failed to disclose the existence of this pending federal action and the class wide claims involving the very judgment sought to be amended." (*Id.* ¶ 91.) Third, Plaintiff contends that Hinshaw LLP's failure to disclose this action "was not merely negligent — it was [a] material and deliberate" omission and also contends that Hinshaw LLP "engaged in the ongoing concealment designed to preserve an ill-gotten judgment" by "presenting the issue to the state court as a narrow procedural oversight while remaining silent on the far-reaching fraudulent practices challenged in this federal matter." (*Id.*) Fourth, Plaintiff alleges that Hinshaw LLP's conduct "constitute[s] a continuation of the original fraud, not a correction." (*Id.* ¶ 96.)

---

[10] On August 6, 2025, Plaintiff filed a cross-motion in the State Court Action. Aff. in Further Supp. of Cross Mot. and Opp'n to Pl.'s Mot., *Deutsche Bank Nat. Tr. Co. v. Lemos*, No. 721299/2020 (N.Y. Sup. Ct. filed Aug. 22, 2025), Docket Entry No. 118. In the cross-motion, Plaintiff contends that Defendants fraudulently miscalculated interest and reduced the bid amount and argued, among other things, that the state court should deny the Deutsche Bank motion. *Id.*

###### ii.    FDCPA allegations

Plaintiff contends that Defendants violated the FDCPA "by making false and misleading representations, using deceptive means and engaging in unfair and abusive practices," including: (1) filing "fraudulent and misleading" motions and documents in the State Court Action against Plaintiff containing interest calculations that illegally inflated the money due and owed to Defendants; (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants; (3) "[d]ecreasing the bid amount after becoming the successful bidder or being assigned a winning bid at a set bid amount"; and (4) collecting money "incidental to the principal obligations under mortgage loan agreements without being expressly authorized by the original mortgage loan agreement to do so." (*Id.* ¶ 109.)

###### iii.    GBL § 349 allegations

Plaintiff asserts the same facts as her FDCPA claim to support her claim under GBL § 349. (*Compare id.* ¶ 109 to *id.* ¶ 116.) Plaintiff alleges that "Defendants' acts and omissions are directed at consumers," and are "deceptive, misleading and fraudulent" including the acts of (1) filing "fraudulent and misleading" motions and documents in the State Court Action containing interest calculations that illegally inflated the money due and owed to Defendants, (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants, and (3) "[d]ecreasing the bid amount after becoming the successful bidder or being assigned a winning bid at a set bid amount." (*Id.* ¶¶ 116–17.)

###### iv.    RICO allegations

Plaintiff first alleges that Defendants were a RICO enterprise, the purpose of which was to "secure judgments of foreclosure and sale through fraudulent means and to use those

9

judgments to extract money," from Plaintiff and class members.  (*Id.* ¶¶ 125–29.)  Second, Plaintiff alleges that Defendants engaged in a pattern of racketeering activity to "defraud and obtain money or property by means of false or fraudulent pretenses and representations" by: (1) "[p]roducing and filing fraudulent motions for a judgment of foreclosure and sale;" (2) "[p]roducing and filing fraudulent [r]eferee [r]eports of [s]ale;" (3) "[u]sing fraudulent, deceptive and misleading [r]eferee [r]eports of [s]ale to obtain [j]udgments of [f]oreclosure and [s]ale against Plaintiff and [c]lass members under false pretenses;" (4) "[d]ecreasing the bid amount after being assigned a winning bid at a set bid amount"; and (5) "[u]sing fraudulently obtained judgments of foreclosure and sale to steal surplus monies from Plaintiff and [c]lass members" ; and (6) "[u]sing fraudulent conduct to report sales that are consistently lower in price than the bid at auction depriving [ ] Plaintiff and [c]lass members of surplus monies."  (*Id.* ¶¶ 130–31.) Third, in furtherance of this goal, Plaintiff alleges that the Defendants filed false filings in the State Court Action on February 21, 2020, September 17, 2024,[11] and October 16, 2024 "falsely claiming that Deutsche Bank is entitled to illegally computed compound interest."  (*Id.* ¶ 132.) Plaintiff also alleges that Defendants have used these "deceptive court filings with every [judgment of foreclosure and sale] that they have fraudulently obtained" to further the fraudulent scheme and take money and property from Plaintiff "by reasons of false pretenses and representations."  (*Id.* ¶ 134.)  Fourth, Plaintiff alleges that Defendants engaged in racketeering activity by "us[ing] wires and the mail to receive the unlawfully obtained monies," constituting wire fraud as defined by 18 U.S.C. § 1343.  (*Id.* ¶ 134–35.)  Fifth, Plaintiff alleges that, as a

---

[11]  *See supra* in n.9.  Although Plaintiff indicates that the Referee filed the Referee's Report of Sale on two dates, September 17, 2024, (Am. Compl. ¶ 75), and October 16, 2024, (*id.* ¶ 85), the Referee's Report of Sale was signed on September 17, 2024 and filed on the docket of the State Court Action on October 16, 2024.  (*See* Referee's Report of Sale.)

result, she has been "deprived of due process and [ ] had foreclosure and [a] sale judgment[]
entered against [her] which [has] been used to extract money from [her] by selling [her]
[Subject] [P]roperty." (*Id.* ¶ 143.)

### v.    Judiciary Law § 487 allegations

To support her claim under Judiciary Law § 487 against Eckert LLC and Hinshaw LLP,
Plaintiff asserts the same allegations as her FDCPA and GBL § 349 claims but also alleges
Eckert LLC and Hinshaw LLP acted with the "intent to deceive consumers and multiple New
York courts."[12] (*Id.* ¶ 120.)

### vi.    Negligence, gross negligence, and legal malpractice allegations

Plaintiff asserts negligence, gross negligence, and legal malpractice claims against Eckert
LLC and Hinshaw LLP premised on the same underlying allegations.[13] For her negligence
claim, Plaintiff alleges Eckert LLC "instructs its attorneys and employees to calculate interest
with the fraudulent method" and "use[s] proposed orders and referee reports of sale with a
miscalculated judgment amount." (*Id.* ¶¶ 158–59.) For her gross negligence claim, Plaintiff
alleges Eckert LLC's "failure to follow the basic and necessary protocol for the calculations in
the referee reports of sale manifested a reckless and intentional breach of its duty of care and a
complete disregard for the rights of the Plaintiff." (*Id.* ¶ 167.) For her legal malpractice claim,
Plaintiff alleges Eckert LLC "negligently and recklessly filed fraudulent referee reports of sale
on behalf of Deutsche Bank." (*Id.* ¶ 171.)

---

[12] The Court notes that while Plaintiff states that both Eckert LLC and Hinshaw LLP
violated Judiciary Law § 487, she alleges only Eckert LLC's violation. (Am. Compl. ¶ 120.)

[13] The Court notes that while Plaintiff brings these claims against both Eckert LLC and
Hinshaw LLP, she only specifies Eckert LLC's conduct. (*See id.* ¶¶ 155–65, 166–69.)

11

### vii.  Unjust enrichment, *prima facie* tort, and conversion allegations

Plaintiff asserts unjust enrichment, *prima facie* tort, and conversion claims for her loss of surplus money.  First, Plaintiff asserts an unjust enrichment claim against Deutsche Bank based on its receipt of $13,352.88 more than it was legally entitled "through Defendants['] fraudulent interest calculations."  (*Id.* ¶ 176.)  In addition, Plaintiff asserts an unjust enrichment claim against Deutsche Bank based on its purchase of the Subject Property for "$574,118.59 less than the bid price at auction."  (*Id.* ¶ 177.)  Second, Plaintiff asserts a *prima facie* tort claim against Defendants for "intentionally [seeking] to reduce and/or eliminate the surplus monies rightfully owed to Plaintiff."  (*Id.* ¶ 182.)  Third, Plaintiff asserts a conversion claim against Defendants for "intentionally, and without authority, assum[ing] or exercis[ing] control over the surplus monies from the foreclosure auction and sale of the Subject Property," thus "interfer[ing] with Plaintiff's possessory right and vested interest in the surplus funds from the sale."  (*Id.* ¶¶ 189–90.)

## II.  Discussion

### a.  Standard of review

The Supreme Court has held that a federal court may abstain from exercising jurisdiction over a case when there is a pending parallel state court proceeding and certain factors weigh in favor of abstention.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19 (1976); *see also Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) ("[A] federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a 'comprehensive disposition of litigation.'" (quoting *Colorado River*, 424 U.S. at 813, 817–18)); *Krondes v. Nationstar Mortg., LLC*, 789 F. App'x 913, 914 (2d Cir. 2020) ("Under the *Colorado River* abstention doctrine, 'a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources.'" (internal quotation marks omitted)

12

(quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012))); *Urquizo v. Cmty. Loan Servicing LLC*, No. 24-CV-909, 2025 WL 1093073, at *4 (E.D.N.Y. Apr. 11, 2025) (quoting *Mochary*, 42 F.4th at 85) (same).

"Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and relief sought are the same." *U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (quoting *Nat'l Union Fire Ins. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)); *see also Yu v. Gao*, No. 24-CV-3902, 2025 WL 80658, at *4 (E.D.N.Y. Jan. 13, 2025) ("[R]aising an alternative theory of recovery . . . is not enough to differentiate the federal suit from the state suit." (first quoting *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362–63 (2d Cir. 1985); and then citing *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013))); *Great S. Bay Med. Care, P.C. v. Allstate Ins.*, 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002) ("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998))). "Perfect symmetry of parties and issues is not required." *Potente v. Cap. One, N.A.*, No. 16-CV-3570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018) (quoting *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013)). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (quoting *In re Comverse Tech., Inc.*, No. 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)); *see also Harman v. Moss & Moss LLP*, No. 23-CV-10614, 2024 WL 5202549, at *4 (S.D.N.Y. Dec. 23, 2024) ("[T]he parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." (citation omitted));

13

*JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL 709068, at

*5 (S.D.N.Y. Feb. 21, 2024) ("Parties are substantially similar when the interests of the parties in

each case are congruent[,] namely when they would benefit from the same outcome." (alteration

in original, internal quotation marks and citation omitted)).

If the proceedings are parallel, the court generally considers the following six *Colorado*

*River* abstention factors, with the balance heavily weighted in favor of the exercise of

jurisdiction:

> (1) whether the controversy involves a res over which one of the
> courts has assumed jurisdiction; (2) whether the federal forum is less
> inconvenient than the other for the parties; (3) whether staying or
> dismissing the federal action will avoid piecemeal litigation; (4) the
> order in which the actions were filed[] and whether proceedings
> have advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether the state
> procedures are adequate to protect the plaintiff's federal rights.

*Niagara*, 673 F.3d at 100–01 (quoting *Colorado River*, 424 U.S. at 813–14); *see Krondes v.*

*Nationstar Mortg., LLC*, No. 17-CV-4974, 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018)

(quoting *Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001))

(same), *aff'd*, 789 F. App'x 913 (2d Cir. 2020); *see also Ne. Bldg. Sys. LLC v. Berkley Ins.*, No.

22-CV-5179, 2025 WL 1207669, at *5 (E.D.N.Y. Apr. 25, 2025) (explaining that application of

the *Colorado River* factors "does not rest on a mechanical checklist, but [rather] on a careful

balancing of the important factors" (alternation in original) (quoting *TD Bank, N.A. v. 202-4 W.*

*23rd St. Corp.*, 760 F. Supp. 3d 87, 92 (S.D.N.Y. 2024))).  Because the balance is heavily

weighted in favor of exercising jurisdiction, "[w]here a *Colorado River* factor is facially neutral,

that 'is a basis for retaining jurisdiction, not for yielding it.'"  *Niagara*, 673 F.3d at 101 (quoting

*Woodford*, 239 F.3d at 522); *see also LeChase Constr. Servs., LLC v. Argonaut Ins.*, 63 F.4th

160, 173 (2d Cir. 2023) (explaining that a court has "little or no discretion to abstain in a case

14

which does not meet traditional abstention requirements," which, "[i]n the context of *Colorado River* abstention, that means that district courts must carefully consider each of 'six factors,'" and weigh neutral factors in favor of retaining jurisdiction (quoting *Niagara*, 673 F.3d at 99–101)).

> **b.    The Court grants Defendants' motions to dismiss pursuant to the *Colorado River* abstention doctrine**
>
>> **i.    Defendants' arguments**

Defendants argue that this action and the State Court Action are parallel because they concern substantially the same parties, issues, and requested relief.[14]  (Eckert LLC's Mem. 14–15; Deutsche Bank's Mem. 13–14; Select Portfolio's Mem. 14–16; Hinshaw LLP's Mem. 16–17.)  In support, Defendants argue that both actions concern the same Subject Property, loan, foreclosure sale, and parties.  (Eckert LLC's Mem. 15; *see* Deutsche Bank's Mem. 13–14; Select Portfolio's Mem. 14;[15] Hinshaw LLP's Mem. 2.)  Deutsche Bank and Select Portfolio argue that the same issues will be litigated in the State Court Action because the state court will "need to determine whether the court-appointed referee's reduction of the bid amount in her report of sale was the result of a mistake (as opposed to intentional fraud)."  (Select Portfolio's Mem. 15; *see*

---

[14]  The Court notes that Defendants argue that *Colorado River* abstention should be applied to Plaintiff's argument that Deutsche Bank purchased the Subject Property for $577,928.72 less than the winning bid.  (*See* Eckert LLC's Mem. 15; Deutsche Bank's Mem. 13–14; Select Portfolio's Mem. 14, Hinshaw LLP's Mem. 2.)  Defendants do not argue that *Colorado River* abstention should be applied to Plaintiff's argument that Defendants "collectively engaged in a fraudulent scheme to purposefully miscalculate interest due and owing on residential mortgages in order to obtain vastly inflated payouts from court-ordered foreclosure sales."  (Am. Compl. ¶ 11.)  However, as discussed *infra* in Section II.b.ii.2, *Colorado River* abstention applies to both of Plaintiff's arguments, which are that Defendants miscalculated interest owed and reduced the bid amount.

[15]  Select Portfolio argues that while it is not a party in the State Court Action, as the servicer of the mortgage on the Subject Property on behalf of Deutsche Bank, it has the same interests as Deutsche Bank.  (Select Portfolio's Mem. 14.)

Deutsche Bank's Mem. 14 (stating that this action and the State Court Action concern the "appropriate purchase price for the [Subject] Property" and "Plaintiff's entitlement to any surplus funds").)  In addition, Deutsche Bank argues that Plaintiff's requested relief in this action is "equally available to her in the [State Court Action]" because her claims challenge "how much [she] should have received in surplus funds from the foreclosure and sale of the [Subject] Property."  (Deutsche Bank's Mem. 14; *see* Select Portfolio's Mem. 15 (stating that Plaintiff's claim regarding the bid reduction "seek damages stemming from the allegedly fraudulent reduction of the winning bid amount").)

In addressing the six *Colorado River* abstention factors, Defendants argue first, that the state court has jurisdiction over the *res*, which is the Subject Property, exercised through the State Court Action.  (Eckert LLC's Mem. 15; Deutsche Bank's Mem. 15; Select Portfolio's Mem. 16; Hinshaw LLP's Mem. 17 ("[T]he state court . . . exercised jurisdiction over the [Subject] Property when Deutsche Bank commenced the [State Court Action].").)  Second, Defendants argue that (1) the state court is a more convenient forum because the Subject Property and Plaintiff's residence is in Queens County, (Select Portfolio's Mem. 16), or (2) both the state and federal courts are equally convenient for the parties, (Eckert LLC's Mem. 16; Deutsche Bank's Mem. 15).  Third, Defendants argue that allowing this action to proceed will result in "duplicative and piecemeal litigation over the calculation of interest [ ] and the assignment of the foreclosure bid."  (Eckert LLC's Mem. 16; *see* Deutsche Bank's Mem. 15; Select Portfolio's Mem. 17; Hinshaw LLP's Mem. 17.)  In support, Deutsche Bank contends that resolving Plaintiff's claims in this action would require determination of the "appropriate purchase price for the [Subject] Property and what amount of surplus funds, if any, Plaintiff is entitled to," which are the "same legal and factual issues to be determined" in the State Court

16

Action.  (Deutsche Bank's Mem. 15.)  In addition, Select Portfolio contends that the state court will "necessarily answer" Plaintiff's allegation in this action, *i.e.*, whether the reduction of the winning bid amount was the result of intentional fraud, when deciding Deutsche Bank's pending motion to set aside the foreclosure sale or amend the Referee's Report of Sale.  (Select Portfolio's Mem. 17.)

Fourth, Defendants argue that the Court should abstain from exercising jurisdiction because the State Court Action "has been pending for over a decade and is more advanced than this action," while this action is still at the pleadings stage.  (Deutsche Bank's Mem. 15; *see* Eckert LLC's Mem. 16; Hinshaw LLP's Mem. 18.)  Select Portfolio also argues that the Court should abstain from exercising jurisdiction because Deutsche Bank filed its motion to set aside the foreclosure or amend the Referee's Report of Sale in June of 2025, which was returnable in August of 2025, while this action was filed in April of 2025 and has no activity beyond the current motions to dismiss.  (Select Portfolio's Mem. 17.)

Fifth, Eckert LLC and Select Portfolio argue that the Court should abstain from exercising jurisdiction because, while Plaintiff asserts federal FDCPA and RICO claims in this action), she also asserts New York state and common law claims for GBL § 349, Judiciary Law § 487, negligence, gross negligence, legal malpractice, unjust enrichment, *prima facie* tort, and conversion, (Eckert LLC's Mem. 16; Select Portfolio's Mem. 17), and Deutsche Bank argues that this factor is "neutral," (Deutsche Bank's Mem. 16).  In support, Eckert LLC and Deutsche Bank contend that the claims are governed by state law, New York Real Property Actions and Proceedings Law, and New York Civil Practice Law and Rules Law.  (Eckert LLC's Mem. 16; *see* Deutsche Bank's Mem. 16.)  In addition, Deutsche Bank argues that "[i]nquiries into foreclosure proceedings are fundamentally matters of state law" and that the Court should not

consider Plaintiff's federal claims under this factor because they are "unpersuasive." (Deutsche Bank's Mem. 16.)

Sixth, Defendants argue that the Court should abstain from exercising jurisdiction because the state court that is presiding over the State Court Action and deciding Deutsche Bank's motion to set aside the foreclosure sale or amend the Referee's Report of Sale is an "adequate vehicle for the complete and prompt resolution of the issues between the parties." (Select Portfolio's Mem. 18; *see* Eckert LLC's Mem. 16 ("New York state courts are fully capable of protecting Plaintiff's rights, including any federal rights that may be implicated"); Deutsche Bank's Mem. 16 (arguing that Plaintiff "has not raised any question regarding the adequacy of her ability to enforce her rights in the [State Court Action]" (internal quotation marks, alterations, and citation omitted)); Hinshaw LLP's Mem. 18.)

### ii.   Plaintiff's arguments

Plaintiff argues first, that this action and the State Court Action are not parallel because this action "arises from facts alleging a widespread fraudulent scheme to miscalculate interest," and the State Court Action "concern[s] [ ] Plaintiff's mortgage and whether or not it had been defaulted on." (Pl.'s Mem. 15.) In support, Plaintiff contends that this action and the State Court Action are not parallel because "the litigation of a foreclosure action will not have any effect or relation to the determination of a fraudulent scheme in this instant federal matter." (*Id.*) Second, Plaintiff argues that "Deutsche Bank and Hinshaw LLP's attempt to continue the [State Court Action]" "does not automatically render the two actions parallel" because resolution of the Deutsche Bank motion "will not dispose of any of Plaintiff's claims in this action." (*Id.* at 16.)

In addressing the *Colorado River* abstention factors, Plaintiff argues first, that both the state court and this Court have jurisdiction over the *res*, which is the Subject Property. (*Id.*)

18

Second, Plaintiff contends that "there is no proof that the federal forum would be less convenient for either party." (*Id.* at 17.) Third, Plaintiff argues that the desire to avoid piecemeal litigation is "not a threat" in this action because the state court will address "the amount of mortgage undertaken by Plaintiff, whether that [mortgage] was defaulted on, and what the [J]udgment of [Foreclosure] and [S]ale will look like." (*Id.*) Fourth, Plaintiff argues that jurisdiction is favored in this Court because she asserts "several federal claims" "which cannot be adjudicated in [the] state court and would thus be an immense prejudice to Plaintiff[] if the [C]ourt abstained jurisdiction." (*Id.*) Fifth, Plaintiff argues that the state court will not be an "adequate vehicle for complete and prompt resolution of the issues between the parties" because the state court would not be able to adjudicate Plaintiff's federal claims. (*Id.*) Plaintiff does not address the fourth *Colorado River* factor, which is the order in which the actions were filed.

### 1.    The State Court Action and this proceeding are parallel

The State Court Action is a parallel proceeding to this action because, although the parties are not completely identical and the remedies are distinct, both actions concern the calculation of interest and the bid amount for the Subject Property. *See U.S. Bank*, 804 F. App'x at 107 ("Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and relief sought are the same." (quoting *Nat'l Union Fire Ins. Co.*, 108 F.3d at 22)).

First, the parties between this action and the State Court Action are not identical because Select Portfolio is not a party to the State Court Action. However, although Select Portfolio is not a party in the State Court Action, the actions are parallel because its interests are congruent with the interests of the State Court Action parties. *See Niagara*, 673 F.3d at 100 ("Suits are parallel when substantially the same parties are contemporaneously litigating *substantially the*

19

*same issue* in another forum." (emphasis added) (quoting *Dittmer*, 146 F.3d at 118)); *TD Bank*, 760 F. Supp. 3d at 93 ("'Complete identity of parties and claims is not required,' however, as 'the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation.'" (quoting *GBA Contracting Corp. v. Fid. & Deposit Co. of Md.*, 00-CV-1333, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001)); *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) ("In this Circuit, parallelism can be achieved absent strict identity among the parties to the federal and state actions. The parties, rather, need only be 'substantially the same.'" (quoting *Jenkinson v. Baptiste-Bruno*, No. 16-CV-4519, 2016 WL 7377234, at *3 n.2 (S.D.N.Y. Dec. 20, 2016))); *see also Potente*, 2018 WL 1882848, at *4 ("Abstention may be appropriate 'notwithstanding the nonidentity of the parties' in cases where interests are 'congruent.'" (quoting *Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y. 1985), *aff'd*, 768 F.2d 501 (2d Cir. 1985))). In addition, this action and the State Court Action are parallel because Select Portfolio, as the mortgage servicer, has the same interests as Deutsche Bank, the noteholder, which is a party to both actions. *See Sander v. JPMorgan Chase Bank, N.A.*, No. 22-CV-1543, 2023 WL 1866887, at *6 (S.D.N.Y. Feb. 9, 2023) (concluding that state foreclosure action and federal action were parallel because defendants in the federal action "were either employed by or worked with" the mortgagee in the state action" (quoting *Roy v. Bank of N.Y. Mellon*, 2018 WL 4771898, at *4 (E.D.N.Y. Sept. 30, 2018))); *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) (concluding that a federal and state court action were parallel because mortgage servicer, which was a party in only the federal court action, and mortgage noteholder, which was a party in both the federal and state court actions, were "substantially the same"); *Gibson v. Bank of Am., N.A.*, No. 16-CV-2689, 2017 WL 11685868, at *5 (E.D.N.Y. July 14, 2017) (concluding that a federal and state court action were

20

parallel because, in foreclosure actions, the mortgage noteholder and the mortgage servicer are "substantially the same party" because there interests are "congruent"); *see also Krondes*, 2018 WL 2943774, at *3 (finding federal action and related state foreclosure action were "parallel" proceedings where multiple defendants in federal action were not party to state action); *Phillips*, 252 F. Supp. 3d at 298 (finding plaintiffs cannot "entirely avoid[] [the *Colorado River* doctrine] by the simple expedient of naming additional parties"); *Bromfield v. Lend-Mor Mortg. Bankers Corp.*, No. 15-CV-1103, 2016 WL 632443, at *4 (D. Conn. Feb. 17, 2016) (same).

Second, the issues between this action and the State Court Action are substantially similar because they are congruent. "Mere 'commonality in subject matter' does not render actions parallel." *Mochary*, 42 F.4th at 86 (quoting *Dittmer*, 146 F.3d at 118). Rather, "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* at 85 (quoting *Dittmer*, 146 F.3d at 118); *see also Krondes*, 2018 WL 2943774, at *3 ("[Where litigants] filed actions in district courts seeking to . . . enjoin an ongoing state foreclosure action based on alleged violations of federal and state law . . . courts agree: although *Colorado River* abstention is narrow, it applies in such situations."); *Potente*, 2018 WL 1882848, at *4 (stating perfect symmetry of parties and issues is not required and abstention may be appropriate "notwithstanding the nonidentity of the parties" in cases where interests are "congruent" (quoting *Canaday*, 608 F. Supp. at 1475)).

The parties are litigating the same issues based on the same facts — whether Defendants acted fraudulently through their calculation of interest and reduction of the bid amount for the Subject Property. *See Harman*, 2024 WL 5202549, at *4 (finding that the state court and federal court actions were parallel where they arose "out of the same series of events, involve[d] the same issues, and concern[ed] the same, or effectively the same, parties as the New York state-

21

court action"). In June of 2025, Deutsche Bank filed a motion to amend the Referee's Report of Sale in the State Court Action in August of 2025, Plaintiff filed in the State Court Action an opposition and cross-motion to Deutsche Bank's motion. In her cross-motion, Plaintiff argues similar facts as this action — that Defendants fraudulently miscalculated the interest owed in the Referee's Report of Sale and fraudulently reduced the bid amount — to argue that the state court should (1) deny Deutsche Bank's motion and (2) grant her cross-motion seeking sanctions against Defendants.[16] (*See* Am. Compl. ¶¶ 33–43.) Aff. in Further Supp. of Cross Mot. and Opp'n to Pl.'s Mot. ¶¶ 6–20, *Deutsche Bank Nat. Tr. Co. v. Lemos*, No. 721299/2020 (N.Y. Sup. Ct. filed Aug. 22, 2025), Docket Entry No. 118. Further, both actions will determine whether Defendants were involved in a fraudulent scheme to miscalculate interest and reduce the bid amount. As a result, the state court's decision regarding Deutsche Bank's motion, whether the state court (1) sets aside the judgment of foreclosure and sale or (2) amend the Referee's Report of Sale, would inform the Court's decision in this action. *See U.S. Bank*, 804 F. App'x at 107 (concluding proceedings were parallel despite different causes of action because "the foreclosure action [in federal court] cannot be resolved without also resolving the state-court claims").

Third, even though the relief sought between this action and the State Court Action differs because Plaintiff seeks a declaratory judgment, injunctive relief, and damages in this action and Deutsche Bank seeks to set aside the foreclosure sale or amend the Referee's Report of Sale in the State Court Action, this difference does not defeat parallelism. Parallelism does not require the same relief. *Potente*, 2018 WL 1882848, at *4 (stating that parallelism does not require the same relief). Instead, parallelism is maintained when the federal and state

---

[16] Plaintiff also requested that the state court stay the Deutsche Bank motion pending a decision in this action. Aff. in Further Supp. of Cross Mot. and Opp'n to Pl.'s Mot. 9, *Lemos*, No. 721299/2020. The state court has not yet ruled on the request for a stay.

proceedings are addressing the same central issues. *Telesco*, 765 F.2d at 362 ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."); *Phillips*, 252 F. Supp. 3d at 296–97 ("[T]he fact that [the p]laintiffs seek different, and even conflicting, forms of recovery in this action does not defeat parallelism, where the underlying events remain identical."); *Garcia v. Tamir*, No. 99-CV-298, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) ("[E]ven if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues."); *see also Yu*, 2025 WL 80658, at *4 (finding parallel proceedings even though one action sought injunctive relief and monetary relief and the other only sought monetary relief (citing *Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, No. 19-CV-11222, 2020 WL 1082774, at *6 (S.D.N.Y. Mar. 5, 2020))); *Zeppelin Sys. USA, Inc.*, 2020 WL 1082774, at *6 ("Even though [the p]laintiff seeks additional sums, as well as injunctive relief, in this court, the underlying events for both this action and enforcement of the mechanic's lien are identical and the resolution of both actions depend on the same questions of breach of contract."); *Krondes*, 2018 WL 2943774, at *3–4 (finding that although plaintiff asserted five federal claims, including RICO, TILA, and due process claims, the federal proceeding was "essentially the same" as the state foreclosure action and collecting cases); *Sitgraves*, 265 F. Supp. 3d at 413 (actions were parallel when both questioned whether the bank "may enforce the subject note and mortgage"); *Phillips*, 252 F. Supp. 3d at 296 ("[T]he fact that [p]laintiff[] seek[s] different . . . forms of recovery in this action does not defeat parallelism, where the underlying events remain identical.").

Accordingly, the Court finds that the Amended Complaint and the State Court Action both involve the foreclosure of the Subject Property, the alleged miscalculation of interest owed,

and the alleged reduction of the bid amount.  Plaintiff, Eckert LLC, Deutsche Bank, and Hinshaw LLP are parties to both actions, and Select Portfolio, as the mortgage servicer, has the same interests as Deutsche Bank, the noteholder as discussed *supra* in section II.b.ii.1.  As a result, both actions are parallel.

### 2.    The *Colorado River* factors weigh in favor of abstention

Having determined that the Amended Complaint and the State Court Action are parallel, the Court considers the six *Colorado River* factors.  For the reasons discussed below, the factors weigh in favor of abstention.

### A.    Whether *res* is involved

The first factor — whether *res* is involved — weighs in favor of abstention because the State Court Action, a foreclosure proceeding, is an *in rem* proceeding for which the state court has assumed jurisdiction.  *See F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) (stating that a foreclosure is an *in rem* proceeding, and the court where the proceedings *in rem* has exclusive jurisdiction of the case); *see also F.D.I.C. v. Regency Sav. Bank, F.S.B.*, 271 F.3d 75, 76 (2d Cir. 2001) (same); *Gibson*, 2017 WL 11685868, at *5 (quoting *Four Star Holding*, 178 F.3d at 102) (same).  Where the state court proceeding is a foreclosure action, "this factor strongly favors abstention."  *Krondes*, 2018 WL 2943774, at *3 (finding this factor "dispositive" (citing *Four Star Holding*, 178 F.3d at 101–02)); *see Teves Realty, Inc. v. Bartley*, No. 14-CV-3227, 2017 WL 1232443, at *2 (E.D.N.Y. March 31, 2017) ("[B]ecause '[a] foreclosure action is an *in rem* proceeding,' a court has 'exclusive jurisdiction to proceed' where a foreclosure action was first filed in that court, and a parallel proceeding subsequently was filed in another court." (second alteration in original) (quoting *Four Star Holding*, 178 F. 3d at 102)).  The fact that Plaintiff filed this action before Deutsche Bank filed its motion in the State Court Action does not affect this determination because the state court assumed jurisdiction of the *res*

when Deutsche Bank filed the foreclosure action in 2010.[17]  *See Four Star Holding*, 178 F.3d at

102 (stating that the court which has the foreclosure proceeding has exclusive jurisdiction of the

case).

### B.    Location of the forums

The second factor — location of the forums — is neutral because both forums are in New

York City.  While the state court, the Subject Property, and Plaintiff's residence are in Queens,

New York, and this Court is in Brooklyn, New York, this Court is not meaningfully less

convenient for the parties than the state court.  *See Niagara*, 673 F.3d at 101 (concluding that the

federal and state court "appear to be equally convenient" because the parties and fora are in

northern New York state).  The Second Circuit has held that "where the federal court is just as

convenient as the state court, that factor favors retention of the case in federal court."  *Id.*

(alteration omitted) (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)); *see*

*also Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at *6 (finding the second factor neutral and

therefore in favor of retention where both actions occurred in New York); *Harman*, 2024 WL

5202549, at *5 (same).  However, while there is little difference in convenience to the parties

between the state court in Queens and this Court in Brooklyn, Defendants would be

inconvenienced in having to litigate in both state and federal courts at the same time regarding

the same property.  *See Phillips*, 252 F. Supp. 3d at 299 ("[T]here is plainly inconvenience in

having to litigate actively in both state and federal courts at the same time." (quoting *Lefkowitz v.*

*Bank of N.Y.* 676 F. Supp. 2d 229, 275 (S.D.N.Y. 2009))); *Colony Ins. v. Danica Grp., LLC*, No.

---

[17]  In addition, as discussed *infra* in Section II.b.ii.2.D, the fact that Plaintiff filed this action before Deutsche Bank filed its motion in the State Court Action is immaterial because the *Colorado River* factors do not consider exclusively the "sequence in which the cases were filed," but instead also considers "how much progress has been made in the two actions."  *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)).

13-CV-1714, 2014 WL 4417353, at \*7 (E.D.N.Y. Sep. 8, 2014) ("[F]orcing [the defendant] to litigate in two courts would be unduly burdensome to [the defendant] . . . Further, forcing two courts to adjudicate the [p]olicies' enforceability would be a waste of judicial resources."); *Goldman v. Est. of Goldman*, 97 F. Supp. 2d 370, 382 (S.D.N.Y. 2000) (stating that "it would clearly be more convenient for the [e]state to resolve all open issues in the New Jersey forum" because the estate is a New Jersey resident).

### C.    Whether staying the action will avoid piecemeal litigation

The third factor — whether staying or dismissing this action will avoid piecemeal litigation — weighs in favor of abstention because of the risk of inconsistent judgments regarding the State Court Action.

"The primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Niagara*, 673 F.3d at 101–02 (quoting *Woodford*, 239 F.3d at 524). When "the state and federal issues are 'inextricably linked,' the risk of [piecemeal] adjudication is real" and "potential exists for inconsistent and mutually contradictory determinations." *De Cisneros v. Younger*, 871 F.2d 305, 307–08 (2d Cir. 1989) (citation omitted). Maintaining parallel proceedings in two forums could "waste judicial resources and invite duplicative effort," and thus, this factor weighs in favor of abstention. *Arkwright-Bos. Mfrs. Mut. Ins. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 52–53 (2d Cir. 2020) (affirming the district court's abstention because "the danger of piecemeal litigation was very strong and arguably the key factor" and noting that "avoiding piecemeal litigation may be the paramount consideration under certain circumstances" (citing *id.*)); *De Cisneros*, 871 F.2d at 307–08

26

(affirming abstention under *Colorado River* where "[t]he basis of the district court's decision to abstain [was] the third factor" because the state and federal court litigations were "inextricably linked"); *Nationwide Gen. Ins. v. Rael Maint. Corp.*, No. 23-CV-4433, 2024 WL 1805544, at *7–8 (S.D.N.Y. Apr. 24, 2024) (finding that the third factor "weigh[ed] heavily in favor of abstention" where the plaintiffs sought to recover damages from a flooding incident under New York negligence law in state and federal court); *but see Yu*, 2025 WL 80658, at *5 ("[B]ecause 'any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.'" (quoting *Fernandez v. City of New York*, No. 17-CV-2431, 2017 WL 2894144, at *3 (S.D.N.Y. July 7, 2017))).  When *res judicata* or collateral estoppel can apply, this factor does not weigh in favor of abstention.  *See Niagara*, 673 F.3d at 102 (finding the third factor weighed in favor of the federal forum because defendants were named in both actions and the risk of inconsistent outcomes "seem[ed] slim" since the "claims [were] straightforward, and the New York state courts appear[ed] unlikely to decide them anytime soon"); *TD Bank*, 760 F. Supp. 3d at 94 (finding the third factor weighed in favor of the federal forum because "[the defendant] failed to demonstrate how principles of *res judicata* and/or collateral estoppel would fail to prevent the possibility of inconsistent outcomes"); *FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 443 (S.D.N.Y. 2019) (finding the third factor did not favor abstention because the proceedings involved the same dispute between the same two parties and a decision in one proceeding would generally have preclusive effect in the others); *but see Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983) (concluding that because "a judgment by either court would ordinarily be res judicata in the

27

other, the existence of the concurrent proceedings creates the potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first"); *Lefrancois v. Killington/Pico Ski Resort Partners, LLC*, No. 19-CV-72, 2019 WL 6970944, at *7 (D. Vt. Dec. 19, 2019) ("Even if the doctrine of collateral estoppel or res judicata reduced the likelihood of inconsistent outcomes, abstention is warranted to prevent an 'unseemly and destructive race' and the waste of judicial resources.'" (quoting *San Carlos Apache Tribe of Ariz.*, 463 U.S. at 567)); *Phillips*, 252 F. Supp. 3d at 299 ("This factor favors abstention even where the actions are 'merely duplicative,' such that the availability of res judicata or collateral estoppel would mitigate the risk of inconsistent outcomes."); *Colony Ins.*, 2014 WL 4417353, at *7 ("[E]ven where principles of res judicata and collateral estoppel would apply, the risks of duplicative litigation and an unseemly race to judgment weigh in favor of abstaining." (citations omitted)).

Plaintiff asks both this Court and the state court to determine whether Defendants acted fraudulently in the foreclosure proceedings. First, Plaintiff argues in this action and the State Court Action that Defendants acted fraudulently in reducing the bid amount. The Court would necessarily have to decide these same factual and legal issues because they form the basis of Plaintiff's claims in this action. Similarly, Plaintiff argues in this action and the State Court Action that Defendants acted fraudulently in calculating the interest owed. The Court will necessarily interpret the October of 2024 Referee's Report of Sale — which is currently pending modification in the State Court Action — which creates risk of piecemeal litigation and inconsistent outcomes. As a result, "the state and federal issues are inextricably linked, the risk of [piecemeal] adjudication is real," and "a potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 307–08 (internal quotation marks omitted). With inconsistent dispositions comes "additional litigation on assertions of claim and

28

issue preclusion," and this "waste[s] judicial resources and invite[s] duplicative effort."

*Arkwright-Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211; *see TD Bank*, 760 F. Supp. 3d at 94 ("Since 'any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal.'" (quoting *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997))).  Because maintaining these parallel proceedings — especially the risk of modification of the Referee's Report of Sale — would "waste judicial resources and invite duplicative effort," this factor weighs in favor of abstention.  *See Arkwright–Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211 (noting that "the danger of piecemeal litigation is the paramount consideration"); *Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at *6 (finding third factor favored abstention because maintaining the two proceedings would "waste judicial resources and invite duplicative effort" (quoting *Arkwright-Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211)).[18]

---

[18]   In addition, upon resolution of Deutsche Bank's and Plaintiff's cross-motion in the State Court Action, *res judicata* and collateral estoppel would apply to every claim in this action, except the Judiciary Law claim.  First, *res judicata* would apply to this action because the State Court Action will result in a final adjudication on the merits, and Plaintiff could have challenged the calculation of interest owed or the bid amount in the State Court Action.  *See Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 22–23 (2d Cir. 2016) (affirming a district court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action for mortgage fraud was precluded by a prior state court foreclosure action); *Garcha v. City of Beacon*, 232 F. App'x 74, 75 (2d Cir. 2007) ("[L]ater claims arising out of the same factual grouping as an earlier litigated claim are barred, even if the later claims are based on different legal theories or seek dissimilar or additional relief." (citing *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 591 (2d Cir. 1994))).  Second, collateral estoppel would apply to this action because the state court will have decided whether the interest calculations and foreclosures are valid.  *See Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) ("[F]or collateral estoppel to act as a bar, the party *against* whom the issue was previously decided must be the same as or in privity with the party raising the issue in the present action." (citation omitted)).  The application of *res judicata* and collateral estoppel also favor abstention. *See Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983) (concluding that because "a judgment by either court would ordinarily be res judicata in the other, the existence of the concurrent proceedings creates the potential for spawning an unseemly and destructive race"); *Colony Ins. v. Danica Grp., LLC*, No. 13-CV-1714, 2014 WL 4417353, at *7 (E.D.N.Y.

### D.    Status of the proceedings in each forum

The fourth factor — the status of proceedings in each forum — weighs in favor of abstention because the State Court Action commenced in 2010, over fifteen years ago.  In contrast, this action has not progressed past the pleadings stage.

This factor compares whether more progress has been made in one proceeding over the other.  *See Niagara*, 673 F.3d at 102 ("[T]his prong of the *Colorado River* test turns not just 'on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" (quoting *Vill. of Westfield*, 170 F.3d at 122)).  If more progress has been made in the state court proceeding, then this factor favors abstention.  *See Telesco*, 765 F.2d at 363 (explaining that "it hardly seem[ed] wise to permit plaintiff to start anew in federal court" where "[t]he federal suit . . . like that in *Colorado River*, ha[d] not moved beyond the initial pleadings and the motion to dismiss"); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 378 (S.D.N.Y. 2020) (finding that the fourth factor "slightly favor[ed] abstention" where no discovery had occurred in the federal action, while the state action had engaged in more discovery but had "slowed considerably because of disputes"); *see also TD Bank*, 760 F. Supp. 3d at 94 (finding the fourth factor neutral when both actions were "in their infancy"); *Nationwide Gen. Ins.*, 2024 WL 1805544, at *9 (finding the fourth factor was neutral because there was "no substantial difference" in the order of proceedings and neither was significantly more advanced).

Abstention is favored when the state court action involves a foreclosure action that has been pending before the federal action and is in its advanced stages.  *See Zulli v. JP Morgan Chase Bank*, No. 23-CV-3519, 2025 WL 2482300, at *9 (E.D.N.Y. Aug. 27, 2025) (concluding

---

Sep. 8, 2014) ("[E]ven where principles of res judicata and collateral estoppel would apply, the risks of duplicative litigation and an unseemly race to judgment weigh in favor of abstaining." (citations omitted)).

that abstention is favored because the state court foreclosure action "has been pending in state court much longer than the instant action"), *appeal docketed*, No. 25-2398 (2d Cir. Sep. 30, 2025); *Adam Pl0tch LLC v. U.S Bank Nat'l Ass'n*, No. 21-CV-6137, 2024 WL 4977003, at *5 (E.D.N.Y. Oct. 17, 2024) (stating that abstention is favored because "[t]he foreclosure action has been pending since 2009 and has advanced to the point where one of the sole remaining issues in that action is [a motion to reargue a substitution motion and a related pending appeal]"); *Where the Heart is LLC v. Wells Fargo Bank, N.A.*, No. 21-CV-6099, 2023 WL 6308042, at *7 (E.D.N.Y. Sep. 27, 2023) (concluding that the state court action is "at a more procedurally and factually advanced stage" because the foreclosure action was "commenced in 2013 and over the past ten years, [the p]laintiff filed an answer, an amended answer, a notice of deposition and a notice of discovery, including interrogatory demands and document requests"); *Sander*, 2023 WL 1866887, at *7 (stating that abstention is favored because the state court foreclosure action commenced over three years ago and was nearly complete, while the federal action had not "progressed past the pleadings stage, and no scheduling order has been entered"); *Cassis v. Fed. Nat'l Mortg. Assoc.*, No. 21-CV-969, 2021 WL 6197064, at *6 (E.D.N.Y. Dec. 31, 2021) (stating that abstention is favored because state court foreclosure action "has been pending for over eleven years and is now in an advanced stage of litigation"); *Bartley*, 2017 WL 1232443, at *3 (stating that abstention is favored because state court foreclosure action "ha[d] been active and ongoing for so many years" prior to federal court action).

This factor weighs in favor of abstention because Deutsche Bank commenced the State Court Action over fifteen years ago, and Plaintiff commenced this action approximately one year ago. The State Court Action has made more progress than this action because the state court has handled the Judgment of Foreclosure and Sale, the Referee's Report of Amount Due, the Subject

31

Property auction, the Referee's Report of Sale, and now, Deutsche Bank's motion to either set aside the judgment of foreclosure or sale or modify the Referee's Report of Sale. In the State Court Action, the company assigned its winning bid to Deutsche Bank in May of 2024, (Am. Compl. ¶ 84), the state court filed a stipulation regarding the assignment in September of 2024, Stip., *Lemos*, No. 721299/2020, (N.Y. Sup. Ct. filed Sep. 27 and Sep. 30, 2024), Docket Entry No. 93–94, and the Referee filed the Referee's Report of Sale in October of 2024, (Am. Compl. ¶ 85). In June of 2025, Deutsche Bank filed a motion to amend the Referee's Report of Sale in the State Court, (*id.* ¶ 90), and in August of 2025, Plaintiff filed an opposition to Deutsche Bank's motion and a cross-motion for sanctions, Aff. in Further Supp. of Cross Mot. and Opp'n to Pl.'s Mot., *Lemos*, No. 721299/2020. Plaintiff commenced this action on April 3, 2025. (*See* Compl.)

Accordingly, the extensive litigation history in the State Court Action weighs in favor of abstention because, in contrast, this action "ha[s] not moved beyond the initial pleadings and the motion to dismiss." *Telesco*, 765 F.2d at 363; *see also Zulli*, 2025 WL 2482300, at *9 (stating that abstention is favored because the state court foreclosure action "has been pending in state court much longer than the instant action"). In addition, this factor weighs in favor of abstention because, after years of litigation, the only issues currently before the state court are the bid amount and the calculation of the interest owed. In this action, commenced only one year ago, discovery has been stayed, the parties have briefed this motion, and any resolution of Plaintiff's claims is contingent on the resolution of the bid amount and interest owed calculation in the State Court Action. Accordingly, the proceedings are much further advanced in State Court. *See Adam Pl0tch LLC*, 2024 WL 4977003, at *5 (stating that abstention is favored because the state court foreclosure action has been pending for over a decade and has one remaining issue); *Cassis*, 2021 WL 6197064, at *6 (stating that abstention is favored because state court

foreclosure action "has been pending for over eleven years and is now in an advanced stage of litigation"); *Bartley*, 2017 WL 1232443, at \*3 (stating that abstention is favored because state court foreclosure action "ha[d] been active and ongoing for so many years" prior to federal court action).

### E.    Whether state or federal law provides the rule of decision

The fifth factor — whether state or federal law provides the rule of decision — is neutral because while Plaintiff purports to bring two federal claims, the majority of her claims are state claims that the state court can adequately protect, and the claims do not implicate any federal rights that the state court cannot adequately protect.

"When the applicable substantive law is federal, abstention is disfavored." *De Cisneros*, 871 F.2d at 309; *see Iacovacci*, 437 F. Supp. 3d at 378 (quoting *id.*). "[T]he absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Niagara*, 673 F.3d at 102 (quoting *Vill. of Westfield*, 170 F.3d at 123–24); *see Arkwright-Bos. Mfrs. Mut. Ins.*, 762 F.2d at 211 (finding this factor weighed in favor of abstention because the federal action raises "serious questions of state law," which were not "well-settled state-law principles" (quoting *Giardina v. Fontana*, 733 F.2d 1047, 1051 (2d Cir. 1984))); *see also Yu*, 2025 WL 80658, at \*7 (holding the fifth factor favored abstention because all claims were state law claims).

The majority of Plaintiff's claims — GBL § 349, Judiciary Law § 487, negligence, gross negligence, legal malpractice, unjust enrichment, *prima facie* tort, and conversion — are state law claims. Although Plaintiff asserts two federal claims, FDCPA and RICO, each relies on the same underlying facts — the foreclosure action, its interest calculation, and its bid amount — which is already before the state court. *See Zulli*, 2025 WL 2482300, at \*9 ("Although [the

33

plaintiff] asserts two federal claims, ([including one] under the FDCPA . . .), each relies on the same underlying facts: whether the [f]oreclosure [a]ction is proper — clearly a matter of state law."); *Krondes*, 2018 WL 2943774, at *4 ("Although [the plaintiff] asserts five federal causes of action, each relies on the same underlying facts: whether his mortgage is valid and whether the [d]efendants may foreclose on his property, matters of state law."); *Value Manufactured Homes, LLC v. Key Bank, N.A.*, 919 F. Supp. 2d 303, 306 (W.D.N.Y. 2013) (No matter how one parses the complaint in this action . . . it clearly relates to matters that are subject to the mortgage foreclosure proceeding in the [ ] [s]tate [c]ourt."); *see also General Reins. Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1988) (stating that abstention is favored "where the bulk of the litigation would necessarily revolve around the state-law . . . rights of . . . [numerous] parties" (alterations in original) (internal quotation marks and citation omitted)); *Bromfield*, 2016 WL 632443, at *5 (Although the [c]omplaint purports to invoke federal law, the allegations do not come close to stating a colorable federal claim.").

### F.    Adequacy of state procedures to protect Plaintiff's federal rights

The sixth factor — whether the state procedures are adequate to protect Plaintiff's federal rights — weighs in favor of abstention because the State Court Action can adequately protect Plaintiff's federal rights pursuant to the FDCPA and RICO.

This factor considers if "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Vill. of Westfield*, 170 F.3d at 124 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).  "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses*, 460 U.S. at 28; *see Niagara*, 673 F.3d at 103 (finding the sixth factor weighed against abstention when the party's federal rights were not adequately

34

protected because the federal claims had been "languishing in state court for years"); *Vill. of Westfield*, 170 F.3d at 124 (finding the district court abused discretion by assuming the state court was an "adequate vehicle for the prompt resolution of the issues" when the district court was "well aware of the slow pace of the state court proceeding" — over thirteen years (internal quotation marks omitted)).  When the state court can resolve the proceedings without concern for federal rights infringement, this factor weighs in favor of abstention.  *See Nationwide Gen. Ins.*, 2024 WL 1805544, at \*10–11 (finding that the sixth factor weighed in favor of abstention because the court had "no reason to doubt" the state court would resolve the proceedings with adequate procedural protections and without significant delay); *Superior Site Work, Inc. v. NASDI, LLC*, No. 14-CV-1061, 2017 WL 384325, at \*7 (E.D.N.Y. Jan. 23, 2017) ("The state court can adequately protect [the plaintiff's] rights.  [The plaintiff] raises only state law claims against [the defendant], all of which can be sufficiently litigated in, and resolved by, the state court.  This factor weighs in favor of abstention." (quoting *Ferolito*, 918 F. Supp. 2d at 144)); *Millennium Drilling Co. v. Prochaska*, No. 14-CV-1985, 2014 WL 6491531, at \*5 (S.D.N.Y. Nov. 18, 2014) (finding this factor weighed in favor of abstention because "infighting between [seven other] parties in the [state] action" did not mean the state court "would be inadequate to protect its rights").  However, "[t]his factor is 'more important when it weighs in favor of federal jurisdiction.'" *Vill. of Westfield*, 170 F.3d at 122 (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)); *Ne. Bldg. Sys. LLC*, 2025 WL 1207669, at \*7 (quoting *id.*); *see Mansfield Heliflight, Inc. v. Longo*, No. 25-CV-388, 2025 WL 3240787, at \*13 (D. Vt. Nov. 20, 2025) ("Although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal

pursuant to *Colorado River*." (quoting *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 169 (S.D.N.Y. 2006))); *In re Asbestos Litig.*, 963 F. Supp. at 253 (citing *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir. 1987)) (same).

Plaintiff brings two federal causes of action under the FDCPA and RICO, and the Court finds that the state procedures are adequate to protect Plaintiff's federal rights. *See Sander*, 2023 WL 1866887, at *7 ("Although [the] plaintiff purports to bring several constitutional and federal claims, her core claims — sounding in mortgage fraud — are state claims and do not implicate any federal rights that the state court cannot adequately protect."). First, the Court concludes that that the state procedures are adequate to protect Plaintiff's federal rights with respect to Plaintiff's RICO claim because state and federal courts have concurrent jurisdiction over civil RICO claims. *See Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) ("[W]e hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO."); *Lewis v. Hatem*, No. 19-CV-6446, 2020 WL 9815189, at *4 (S.D.N.Y. Jan. 30, 2020) ("[S]tate procedures are adequate to protect [the p]laintiff's federal rights, because the state court has jurisdiction to hear a RICO claim as well as the state law claims."), *report and recommendation adopted sub nom.*, *Lewis v. Trott*, 2020 WL 4747503 (S.D.N.Y. Aug. 17, 2020).

Second, the Court similarly concludes that the state procedures are adequate to protect Plaintiff's federal rights with respect to Plaintiff's FDCPA claim because she can pursue this claim in state court, as "[s]tate courts are not bound to adhere to federal standing requirements." *See Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 n.4 (2d Cir. 2021) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)); *Spitz v. Caine & Weiner Co.*, No. 23-CV-7853, 2024 WL 69089, at *4 n.4 (E.D.N.Y. Jan. 5, 2024) ("If [the p]laintiff so chooses, she may pursue her claims in state court, which has jurisdiction to enforce the FDCPA and '[is]

36

not bound to adhere to federal standing requirements.'" (second alteration in original) (quoting *Maddox*, 19 F.4th at 66 n.4)); *Nojovits v. Ceteris Portfolio Servs., LLC*, No. 22-CV-2833, 2022 WL 2047179, at *3 (E.D.N.Y. June 7, 2022) ("Plaintiff is not without remedy; she may pursue her [FDCPA] claims in state courts, which 'are not bound to adhere to federal standing requirements.'" (quoting *Maddox*, 19 F.4th at 66 n.4)); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 137, 145 (E.D.N.Y. 2021) (remanding plaintiff's FDCPA and state law claims to state court for lack of subject matter jurisdiction). Therefore, the state court would be an adequate forum to adjudicate Plaintiff's FDCPA claim because it has been familiar with this litigation for over fifteen years, and state courts have the expertise to handle issues related to a foreclosure action. *See Russo v. Wells Fargo N.A.*, 23-CV-2359, 2024 WL 1348523, at *7 (E.D.N.Y. Mar. 29, 2024) ("[C]ourts in this district have recognized that state courts have the expertise to address foreclosure issues . . . ." and collecting cases).

In summary, *Colorado River* factors two and five are neutral, and therefore weigh against abstention. *See Niagara*, 673 F.3d at 101 (holding that a neutral *Colorado River* factor weighs against abstention). Factors one, three, four, and six weigh in favor of abstention. *Colorado River* abstention analysis is not a "mechanical checklist" but "a careful balancing of the important factors as they apply in a given case." *Niagara*, 673 F.3d at 104 (quoting *Moses*, 460 U.S. at 16). Therefore, because most of the *Colorado River* factors weigh in favor of abstention, the Court abstains from exercising jurisdiction over this case and dismisses the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[19] *See Zulli*, 2025 WL 2482300, at *11

---

[19] Having found that the Court lacks jurisdiction over Plaintiff's claims, the Court declines to address the parties' arguments regarding whether Plaintiff's claims are time-barred or otherwise barred under the *Rooker-Feldman* doctrine, collateral estoppel, and *res judicata*. In addition, the Court does not address the merits of Plaintiffs' claims for the same reason.

37

("[B]ecause the majority of the *Colorado River* factors weigh in favor of abstention, the [c]ourt abstains from jurisdiction over this case and dismisses this action."); *Where the Heart is LLC*, 2023 WL 6308042, at *8 (dismissing action because "[o]n balance, the six *Colorado River* factors weigh in favor of abstention"); *Sander*, 2023 WL 1866887, at *7 (dismissing action because "(i) the state court has already assumed exclusive jurisdiction over the [p]roperty, (ii) exercising jurisdiction risks an outcome inconsistent with the [f]oreclosure [a]ction, and (iii) the [f]oreclosure [a]ction has progressed further"); *Krondes*, 2018 WL 2943774, at *5–6 ("Because this [c]ourt determines that abstention applies, dismissal of this action is the proper course."); *Bartley*, 2017 WL 1232443, at *4 ("[T]he Court dismisses this [foreclosure-related] action under the *Colorado River* doctrine.").

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions and dismisses the Amended Complaint.

Dated: March 30, 2026
      Brooklyn, New York

SO ORDERED:


    s/MKB
MARGO K. BRODIE
United States District Judge
